584 F.2d 308
 99 L.R.R.M. (BNA) 2935, 84 Lab.Cas. P 10,847
 Kenneth W. BENDA, William H. Henderson, Swinton L. Corley,
Individually and on behalf of all class members; Local Lodge
228, International Association of Machinists & Aerospace
Workers, an Unincorporated Association; and Santa Cruz
Missile & Space Test Base Local Lodge 2230, International
Association of Machinists & Aerospace Workers, an
unincorporated association, Plaintiffs-Appellees,
v.
GRAND LODGE OF the INTERNATIONAL ASSOCIATION OF MACHINISTS &
AEROSPACE WORKERS, an unincorporated association,
Defendant-Appellant.
 No. 77-3997.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 28, 1978.
Rehearing and Rehearing En Banc Denied Oct. 19, 1978.
 
 John F. Henning, Jr. (argued), of Henning & Walsh, San Francisco, Cal., for defendant-appellant.
 Richard Harding (argued), of Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before TRASK and SNEED, Circuit Judges, and SKOPIL*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Appellant Grand Lodge of the International Association of Machinists & Aerospace Workers (hereinafter the International) challenges a preliminary injunction entered by the district court rescinding the trusteeship imposed by the International on District Lodge 508 and enjoining any further action by the International to take over the District Lodge or to punish any member of that group. Appellant questions whether the district court had jurisdiction to hear this case, arguing that the exclusive jurisdiction of the National Labor Relations Board (NLRB) over unfair labor practice charges preempts the jurisdiction given to the district courts by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 Et seq. The appellant International also argues that, even if jurisdiction was proper, the district court's conclusions are contrary to existing case law and to the factual record in this case. The appellant also challenges the award of attorney's fees entered against it. We affirm the preliminary injunction, but reverse the grant of attorney's fees.
 
 
 2
 To explicate our holding we shall first set forth the pertinent facts. Then we shall direct our attention to the statute that governs trusteeships of locals and the necessary accommodation between district court jurisdiction provided thereunder and the jurisdiction of the NLRB. Next follows a review of the propriety of the district court's action in granting the preliminary injunction. In doing this we shall first determine and then apply the proper standard of review to the facts of this case. Finally, we shall address the attorney's fees issue.
 
 I. Facts
 
 3
 Appellee Benda is the president of District Lodge 508 of the Machinists Union. This lodge is composed of representatives from all the local lodges in California's Santa Clara and Santa Cruz counties. The members of these locals are all employees of Lockheed Missile & Space Company (LMSC), a wholly-owned subsidiary of Lockheed Aircraft Corporation.
 
 
 4
 The trouble out of which this case arose began in the summer of 1977 when negotiations commenced on a contract to replace the one due to expire in October, 1977. Contract negotiations between the union and LMSC in the past had been coordinated with those involving Lockheed Georgia Company (GELAC), Lockheed California Company (CALAC), and Lockheed Aircraft Services Company (LAS), all of which are also wholly-owned subsidiaries of Lockheed Aircraft. Notwithstanding this coordinated bargaining, the employees of each company previously had always voted separately on whether to accept or reject a contract; acceptance of a contract by employees of one company did not preclude its rejection by employees of another. Acceptance or rejection was a decision by the employees of each individual company.
 
 
 5
 The 1977 negotiations resulted in both LMSC and CALAC employees rejecting contract proposals and going on strike on October 10, 1977. GELAC employees, following an independent course, did not go on strike until October 19. On November 10 negotiations resumed. The International then informed the district and local union representatives that it had decided to engage in corporate-wide joint unified bargaining. This new bargaining plan included a requirement that there be a majority vote of the Combined membership working for All Lockheed subsidiaries before any proposal could be accepted. Authority for this action was derived, the International asserted, from International Circular No. 596, published in 1958, which provides that the International President or an authorized committee shall determine whether all the bargaining units affected by multi-unit agreements with the same employer, company or corporation shall be combined for voting purposes or shall be permitted to vote separately or in what combination.
 
 
 6
 Three of the companies presented their "last, best and final offers" on November 22. The LMSC union representatives voted to present the LMSC proposal to their membership for a vote. GELAC and CALAC union negotiators were dissatisfied with the proposals made to them and voted not to take the contracts to their memberships. The International representatives ruled that, on the basis of these developments, all the Lockheed companies would be informed that the contract proposals had been rejected. The LMSC union representatives voiced their dissatisfaction with this procedure and decided to seek the advice of their local delegate bodies. These delegate bodies, including District Lodge 508, voted to place the contract proposal before the members.
 
 
 7
 On November 25 all officers of District Lodge 508 were suspended by the International President. An International official was designated to take charge of the affairs of District Lodge 508. On November 30 a show cause hearing was conducted as required by the union constitution to determine whether the suspensions should continue. It was the decision of the International's hearing officer to continue the suspensions. In the meantime, two days after the suspension of District Lodge 508's officers, November 27, LMSC employees voted overwhelmingly to accept this contract. Despite this acceptance, the International attempted to continue the strike against LMSC. This presented the LMSC employees with a dilemma. One horn thereof was union discipline if they returned to work, and the other was employer discipline if they failed to do so.
 
 
 8
 This suit was filed in district court on December 6, 1977, alleging that the trusteeship had been imposed in violation of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). Following a hearing, the district court entered a preliminary injunction against the International on December 15. The injunction prohibited appellant from maintaining a trusteeship over District Lodge 508 and from suspending officers and in any other way interfering with those LMSC employees who desired to return to work.
 
 
 9
 The International during this period was not inactive, however. On December 5, 1977, one day prior to the filing of the complaint in this action, it filed an unfair labor practice charge with the NLRB against LMSC. On February 8, 1978, the NLRB issued a complaint based on this charge, the basis of which was LMSC's action in bypassing the International and dealing directly with the district lodge. This was alleged to be a violation of LMSC's duty to bargain collectively with the union. No further action has been taken on this unfair labor practice charge.
 
 
 10
 The International, however, did request that the NLRB intervene in this appeal. The response came on April 7, 1978 in which the General Counsel of the NLRB stated that the NLRB would not intervene and that all NLRB proceedings involving these parties would be stayed pending resolution of this appeal. The response noted that the district court had jurisdiction to consider National Labor Relations Act issues germane to the resolution of the issues properly before it and that in the proceedings before it the district court had not clearly misapplied Board precedents. A subsequent letter further clarified the General Counsel's position, noting that he was neither approving nor disapproving the specific result reached by the district court, but merely was finding that the district court procedures were not so inappropriate as to require Board intervention in this action.
 
 II. Statute That Governs Trusteeships
 
 11
 Title IV of the LMRDA regulates the imposition by labor unions of trusteeships[1] on subordinate union groups. The trusteeship provisions were incorporated into the LMRDA to deal with the abuses of the trusteeship process which had been uncovered by the McClellan Committee. Slovenko, Symposium on the Labor-Management Reporting and Disclosure Act of 1959, 443-47 (1961). The primary approach of the federal legislation is to limit the purposes for which a trusteeship can be established. The LMRDA provides that
 
 
 12
 (t)rusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
 
 
 13
 29 U.S.C. § 462.
 
 
 14
 These requirements may be enforced both by the Secretary of Labor and "any member or subordinate body of a labor Union." 29 U.S.C. § 464(a). The civil enforcement action authorized by the statute may be brought "in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 464(a). The LMRDA, recognizing that many trusteeships are imposed for legitimate purposes, creates a presumption of validity which attaches to a trusteeship "established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws." 29 U.S.C. § 464(c). This presumption can only be overcome by "clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under § 462 of this title." 29 U.S.C. § 464(c). Since unlimited duration was seen as one of the major abuses of the trusteeship process, this presumption of validity extends only for a period of eighteen months. After the eighteen month period, the presumption is reversed and runs against the continued validity of the trusteeship. 29 U.S.C. § 464(c).
 
 
 15
 III. Accommodation of District Court Jurisdiction with that of the NLRB
 
 
 16
 The International strongly argues that judicially developed concepts of preemption and primary jurisdiction should preclude the district court in this case from exercising its jurisdiction under 29 U.S.C. § 464(a). Specifically, it contends that since the unfair labor practice charge presently pending before the NLRB involves issues similar to those presented by this challenge to the trusteeship, the district court should be denied jurisdiction to avoid potential conflict with the NLRB's exercise of its exclusive jurisdiction.
 
 
 17
 The International relies primarily on the line of cases beginning with San Diego Building Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618 (1957), which have held that state proceedings are preempted where the activity which is the subject of the state court action is either arguably protected by the National Labor Relations Act or arguably prohibited by it. The most recent Supreme Court decision in this line is Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). Assuming Arguendo that the scope of preemption as expressed in this line of cases would lead to preemption in this case, we are not convinced that authorities governing preemption of state court jurisdiction are applicable here. On the contrary, we believe that an expression of specific congressional intent should prevail over the conflicting general policy implications of a prior federal statute. See Preiser v. Rodriquez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).
 
 
 18
 In holding that an action brought under the trusteeship provisions of the LMRDA is not preempted by an unfair labor practice charge pending before the NLRB, we join the Fifth Circuit. McDonald v. Oliver, 525 F.2d 1217 (5th Cir. 1976). Our decision is also supported by the many cases which have held that actions brought pursuant to Title I of the LMRDA, which provides a bill of rights for union members, are not preempted because of the possibility of concurrent NLRB jurisdiction. Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4th Cir. 1963); International Brotherhood of Boilermakers v. Braswell, 388 F.2d 193 (5th Cir. 1968); Grand Lodge of International Association of Machinists v. King, 335 F.2d 340, 347 (9th Cir. 1964); Rekant v. Shochtay-Gasos Union Local 446, 320 F.2d 271 (3d Cir. 1963). These courts were convinced that "Congress did not intend that before securing the rights it made enforceable in federal courts, individuals should wait for the Labor Board to pass upon such matters as might also be within its competence." Parks, supra at 922-923. A clear congressional directive that federal courts have jurisdiction to hear such suits was also found to have precedence over application of the primary jurisdiction rule. International Brotherhood of Boilermakers, supra at 196-197. These considerations are equally applicable here.[2]
 
 
 19
 We hasten to add, however, that a district court should avoid, when possible, directly ruling on the merits of an unfair labor practice charge. Such deference will minimize conflicts with the Board and improve the administration of the labor laws. The district court here exhibited the proper deference. It made no holding regarding the unfair labor practice complaint. It did speculate, however, on the outcome of potential unfair labor practice charges and used this speculation as a basis for deciding that the trusteeship was invalid. This speculation does not bind the NLRB. Nor was it necessary to the determination of the trusteeship issue. The fact that unfair labor practice liability may attach to the International's action does not necessarily mean that the trusteeship was established for an improper purpose. This excursus of the district court, however, does not make its granting a preliminary injunction irretrievably erroneous. Valid reasons for its action may exist. If they do, that is enough. The fact that the district court considered unfair labor practice issues does not eradicate these reasons.[3]
 
 
 20
 IV. Was Granting the Preliminary Injunction Proper?
 
 A. Standard of Review
 
 21
 Turning to the propriety of the district court's grating the preliminary injunction, we find that our standard of review is well defined. The grant or denial of a preliminary injunction ordinarily will be reversed only if there has been an abuse of discretion by the lower court. FTC v. Simeon Management Corp., 532 F.2d 708 (9th Cir. 1976); People of State of California ex rel. Younger v. Tahoe Regional Planning Agency, 516 F.2d 215 (9th Cir. 1975); County of Santa Barbara v. Hickel, 426 F.2d 164 (9th Cir. 1970). Use by the lower court of an improper legal standard, however, is not within its discretion. For such error the grant or denial of a preliminary injunction can be freely overturned. Jones v. Pacific Intermountain Express,536 F.2d 817 (9th Cir. 1976); California ex rel. Younger v. Tahoe Regional Planning Agency, supra at 218; Douglas v. Beneficial Finance Co., 469 F.2d 453 (9th Cir. 1972). Thus, before examining for an abuse of discretion we must determine whether the district court applied the proper legal standard.
 
 
 22
 The legal standard adopted by the district court appears in Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975). It provides: "One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." The district court appears to have relied on the second prong of this test, for it concluded merely that serious questions were presented, not that the plaintiffs had a strong possibility of success. This alternate test has been approved several times by this circuit. Motor Vessels Theresa Ann v. Kreps, 548 F.2d 1382 (9th Cir. 1977); Richter v. Department of Alcoholic Beverage Control, 559 F.2d 1168, 1173 (9th Cir. 1977).
 
 
 23
 Recent cases have made it clear, however, that there are not really two entirely separate tests, but that they are merely extremes of a single continuum. Fox Valley Harvestore v. A. G. Harvestore Products, Inc., 545 F.2d 1096 (7th Cir. 1976). The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779 (9th Cir. 1976). No chance of success at all, however, will not suffice. The irreducible minimum has been described by one court as a fair chance of success on the merits, McCormick v. Claytor, 441 F.Supp. 622 (D.Oregon 1977), while another has said the questions must be serious enough to require litigation, Aguirre, supra. The difference between the two formulations is insignificant. Therefore, we accept either as satisfactory.
 
 
 24
 Inasmuch as the district court found only that serious questions were presented, employment of the proper legal standard requires that it also find that the balance of harm tips decidedly in favor of the plaintiffs. The district court made such a finding. Therefore, having employed the proper legal standard we must now determine whether the granting of the preliminary injunction constituted an abuse of discretion.
 
 B. Balancing the Hardships
 
 25
 Turning to the district court's balancing of the hardships, it demonstrated that District Lodge 508 would suffer irreparable injuries in the absence of a preliminary injunction. The trustee was making unauthorized disbursements of strike benefits which threatened the financial life of the district lodge. Further, the International's efforts to continue the strike at the LMSC plant, on pain of sanctions against members who went back to work, was causing, and would cause, many members to drop out of the union. This would threaten the membership base of District Lodge 508.
 
 
 26
 The International, on the other hand, will suffer only a temporary lessening of control over one of its many district lodges as a result of the preliminary injunction. In the light of the history of independent negotiations with each subsidiary, this should not represent a serious loss to International. We recognize that maintenance of control over subordinate groups is a reasonable concern of the International. However, internal union procedures short of a trusteeship should be able to restore the degree of required control. While the success of District Lodge 508 in resisting a trusteeship may encourage other dissident groups to challenge the International's leadership, we cannot view that as the kind of irreparable injury with which equity is concerned. If the International's leadership is no longer acceptable to the membership, we cannot see how an ouster of the entrenched leadership would cause an irreparable injury to the union as a whole. Thus, because the injury to the International is limited and not necessarily irreparable, while that to the district lodge is substantial and irreparable, we find no abuse of discretion by the district court in its conclusion that the balance of hardships tips strongly in favor of the appellees.
 
 C. Probable Outcome on the Merits
 
 27
 We must now determine whether the district court appropriately evaluated the probable outcome on the merits. As previously indicated, this requires ascertaining whether the irreducible minimum probability of success exists. See p. 315 Supra. The legality of the trusteeship imposed on District Lodge 508 is the underlying substantive question one confronts in weighing the merits in this litigation. We must begin by recognizing the presumption of validity[4] which attaches to the trusteeship. This presumption can only be rebutted by clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under the LMRDA. 29 U.S.C. § 464(c). The allowable purposes for establishing a trusteeship include "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462.
 
 
 28
 Obviously, a trusteeship established for a purpose not enumerated in the statute would present quite serious questions worthy of litigation. A trusteeship in which good faith doubt exists with respect to whether it was established for an improper purpose also presents a serious question and one in which there is a fair chance of success on the merits.[5] We hold that such a good faith doubt exists in this case.
 
 
 29
 Support for this holding begins by observing that the statute's list of proper purposes for imposing a trusteeship is imprecise. It reflects the fact that Congress desired to place some limits on the reasons for which trusteeships could be imposed. 1959 U.S. Code Cong. & Admin. News 2318, 2333. The presumption of validity places the burden on those challenging the imposition of the trusteeship during the initial eighteen months. 1959 U.S. Code Cong. & Admin. News 2436. The weight of this burden is made heavy because an allowable purpose of the statute is the carrying out of the legitimate objects of a labor organization. However, "legitimate objects" is nowhere defined in the statute. An object of questionable legitimacy therefore subjects the trusteeship itself to good faith doubt.
 
 
 30
 The International first argues that its legitimate object was to assure the performance of District Lodge 508's duties as a collective bargaining representative. For support it relies on Gordon v. Laborers' International Union, 490 F.2d 133 (10th Cir. 1974), in which the court held that the local's refusal, contrary to the governing constitutional provision, to join a district council and its continued efforts to bargain independently with the employer were contrary to the local's collective bargaining responsibilities, thus justifying the imposition of a trusteeship over that local. Preventing a local from going out on strike in violation of a no-strike provision in a collective bargaining agreement has also been found to be within the allowable purpose of assuring the performance of collective bargaining agreements. National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 922 (2d Cir. 1971); Jolly v. Gorman, 428 F.2d 960 (5th Cir. 1970).
 
 
 31
 Although this case obviously involves the general area of collective bargaining responsibilities, there exists here a good faith dispute as to the underlying collective bargaining responsibilities. The International asserts that it has authority pursuant to International Circular No. 596 to decide when the bargaining units representing the different Lockheed subsidiaries must be combined for contract negotiation purposes. This Circular provides that the International's President can decide whether all units affected by multi-unit agreements with the same employer, company or corporation shall be combined for voting purposes. The precise scope of this directive is not clear. The Lockheed subsidiaries are each separate corporate entities. Arguably, the "same employer" within the meaning of Circular No. 596 is not Lockheed but rather each subsidiary.
 
 
 32
 In addition, appellees' adherence for twenty years to a pattern of separate voting by the employees of each subsidiary suggests that they are properly carrying out the collective bargaining duties and that it is the International, rather than they, that is interfering with the bargaining process. Supporting this conclusion is the fact that the International's constitution contains no specific provision authorizing the International to control all collective bargaining activities and that it reserves to the membership all authority and power not specifically delegated to the International officers. Moreover, the bylaws of District Lodge 508, which were approved by the International, authorize the district lodge president to conduct negotiations and sign agreements on behalf of the district lodge.
 
 
 33
 This conflict over the nature of the collective bargaining duties is at the heart of this controversy. We cannot with the required assurance characterize the purpose of the International's action as the enforcement of reasonably definite and precise collective bargaining responsibilities. We are unwilling to permit the International's assertion of its version of the dispute concerning collective bargaining responsibilities to force us to brand the appellees' prospects on the merits as less than "a fair chance of success." To permit a trusteeship under the circumstances of this case might enable the International effectively to quash all efforts by a subordinate group to assert its view of its rights. Thus, when there is a serious question as to the nature and scope of the collective bargaining duties which the subordinate group is alleged not to be performing, we are reluctant to allow a district court to rely solely on the collective bargaining rationale for imposing a trusteeship.
 
 
 34
 The International, however, argues that the imposition of this trusteeship furthers other "legitimate objects". It insists that it has a right to protect itself from impotence as a labor organization, relying on dicta in National Association of Letter Carriers v. Sombrotto, supra at 922. However, as noted above, that case involved a clear cut flaunting of central authority by a local. It knowingly repudiated a no-strike clause in an existing collective bargaining agreement. While union self-preservation may have been a purpose for imposing the trusteeship there, another strong and legitimate purpose was to enforce collective bargaining responsibilities. No different is Executive Board Local 1302 v. United Brotherhood of Carpenters & Joiners, 477 F.2d 612 (2d Cir. 1973), in which it was held that the local's filing of a decertification petition was a legitimate reason to impose a trusteeship. It was again the impact of the local's action on well-defined collective bargaining responsibilities that made the trusteeship legitimate. Union self-preservation, standing naked and alone, is not sufficient to justify imposition of a trusteeship.[6]
 
 
 35
 We thus find no abuse of discretion in the district court's conclusion that the appellees have established their probability of success equals or exceeds the irreducible minimum which must exist to warrant a preliminary injunction.[7] We can not say that a good faith doubt regarding the propriety of this trusteeship does not exist. Therefore, the grant of the preliminary injunction will be affirmed.
 
 V. Attorney's Fees
 
 36
 The district court awarded appellees over $13,000 in attorney's fees. That order was stayed pending disposition of this appeal. Appellants challenge both the grant of fees at this stage in the proceedings and the failure of the district court to hold an evidentiary hearing to determine the proper amount of such award.
 
 
 37
 Assuming Arguendo that an award of attorney's fees is proper in an action brought pursuant to 29 U.S.C. § 464 under the common benefit exception to the general American rule against the awarding of attorney's fees without specific statutory authority (McDonald v. Oliver, 525 F.2d 1217 (5th Cir. 1976)), we believe and must hold that the district judge abused his discretion in awarding fees at this stage in the litigation.[8] Attorney's fees are only awarded to the prevailing party. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Moore's Federal Practice P 54.77 n.35. In the case presently before us, we are unable to say that appellees are the prevailing party. As we have taken some care to make clear, our affirmance of the preliminary injunction is not a decision on the merits. The preliminary injunction merely serves to preserve the status quo pending that final decision. Awarding attorney's fees at this stage of the litigation would be premature.
 
 
 38
 We acknowledge readily that attorney's fees have been awarded at the preliminary injunction stage in other cases. However, this was done usually when the grant of a preliminary injunction was the primary relief sought and effectively terminated the action. Under those circumstances the litigant obtaining the preliminary injunction can be considered the prevailing party. In Yablonski v. United Mine Workers, 151 U.S.App.D.C. 253, 260, 466 F.2d 424, 431 (1972), the court specifically noted that "the preliminary injunction was the critical step and procured all the relief required." The court there went on to say that "effectiveness in terms of practical results" should be the key to deciding whether one party has prevailed over the other.[9]
 
 
 39
 Appellees did succeed in having the trusteeship enjoined here. However, the case on the merits is a close one and the International has by no means conceded victory to appellees. It is actively pursuing this litigation, seeking approval of the power it asserts is provided by International Circular No. 596. This litigation has not been effectively terminated; hence an award of attorney's fees would not be proper at this time.[10]
 
 
 40
 AFFIRMED in part; REVERSED in part.
 
 
 
 *
 Honorable Otto R. Skopil, Jr., Chief Judge, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The International did not specifically label its action as the imposition of a trusteeship. Instead it suspended the district lodge's officers and appointed an International official to oversee the operations of the district lodge. However, since trusteeship is broadly defined in the LMRDA to include any "method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws", 29 U.S.C. § 402(h), we will treat this case as involving a trusteeship
 
 
 [2]
 Our holding also furthers congressional intent. In enacting the LMRDA the explicitly stated congressional purpose was to regulate internal union practices so as to protect the rights of individual union members. Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Government Printing Office 1445 (1959) (hereinafter Leg. History). If Congress had felt that the National Labor Relations Board could adequately deal with these problems, there would have been no need either to draft new substantive law or to create a new jurisdictional avenue for resolving those disputes. Obviously the doctrines of preemption and primary jurisdiction must yield to the extent necessary to prevent frustration of congressional purposes as expressed in the LMRDA
 
 
 [3]
 We reach this conclusion independently. We are not bound by the opinion of the General Counsel of the NLRB. That action has no impact on the consideration of the legal issues presented here
 
 
 [4]
 The presumption of validity attaches when a trusteeship is established in conformity with the procedural requirements of the union constitution and bylaws and is authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws. 29 U.S.C. § 464(c). Appellees argue on appeal that a proper hearing was never held and so the presumption does not apply. A show cause hearing was held, however, on November 30, 1977 to allow the officers to contest their suspensions. This hearing was conducted by an International official pursuant to Article VI, § 9 of the International constitution. Article L of the bylaws provides that a trial then be held on the underlying charges. While the record does not indicate whether this trial has yet been held, the preliminary hearing adequately satisfies the requirement that the trusteeship be ratified after a fair hearing. See Retail Clerks Union Local 770 v. Retail Clerks International Association, 479 F.2d 54 (9th Cir. 1973). Thus, we conclude that the district court properly found that the presumption of validity applies here
 
 
 [5]
 The fact that clear and convincing proof will be required to rebut the presumption of validity when the merits of the case are decided does not substantially change the showing necessary to obtain a preliminary injunction. Evidence that the actual motive behind the imposition of this trusteeship is not a legitimate one may be sufficient to create both a fair chance of success and questions serious enough to require litigation even though its quality and quantity may not rise to the level of being clear and convincing
 
 
 [6]
 Other courts have agreed that a union's desire to control dissident elements is insufficient to support the imposition of a trusteeship. In United Brotherhood of Carpenters & Joiners v. Brown, 343 F.2d 872 (10th Cir. 1965), the court held that a trusteeship was improper when a local merely failed to affiliate with a district council and pay increased dues. Gordon, supra, distinguished Brown as not involving collective bargaining, the crucial element which legitimized the trusteeship in Gordon. Preventing a local from disaffiliating and then joining with another union has also been found not to be a legitimate purpose for imposing a trusteeship. McVickers v. International Union of District 50, Allied & Technical Workers, 327 F.Supp. 296 (N.D.Ohio 1971). A local's refusal to go along with increased membership dues is also an insufficient reason for imposing a trusteeship on the local. Brotherhood of Painters v. Local 127, 264 F.Supp. 301 (N.D.Cal.1967)
 
 
 [7]
 As noted in § III, the potential for unfair labor practice liability does not require that the trusteeship be found to have been initiated for an illegitimate purpose. The LMRDA is concerned with the motivation for the International's action; collateral consequences of that action, such as unfair labor practice liability, are not accurate reflections of the motivation for the action
 
 
 [8]
 Therefore we do not have to reach the question of whether an evidentiary hearing should have been held
 
 
 [9]
 Similarly, in Bakery & Confectionery Workers International Union v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964), practical reorganization of the International had occurred at the time attorneys' fees were awarded against the union. In Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the court had decided on the question of liability, but had not yet determined the appropriate relief. A favorable decision on the legal question presented properly makes one a prevailing party. Other cases interpreting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which authorizes fee awards to "the prevailing party", have also concluded that effective success rather than the status of the litigation is the key to determining when a party is deemed to have prevailed. Buckton v. National Collegiate Athletic Association, 436 F.Supp. 1258 (D.Mass.1977); Howard v. Phelps, 443 F.Supp. 374 (E.D.La.1978)
 
 
 [10]
 The district judge found that there were exigent circumstances justifying this award. He was particularly concerned that the International would try to prevent District Lodge 508 from using its own funds to pay for its attorney. Since we have upheld the injunction against the trusteeship, District Lodge 508 should again be able to control its own funds and this problem should not be so acute