**UNITED STATES of America, Plaintiff–Appellant,**

v.

**ODESSA UNION WAREHOUSE CO-OP; Cecil A. Schell; Edward Sewall; Marvin Kleyn, Defendants–Appellees.**

No. 86–4367.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1987.

Decided Nov. 27, 1987.

Margaret A. Cotter, Asst. Director, Office of Consumer Litigation, Civil Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

George M. Burditt, Burditt, Bowles & Radzius, Ltd., Chicago, Ill., for defendants-appellees.

Before CANBY, REINHARDT and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

## INTRODUCTION

The United States brought this action to enjoin the sale and movement of wheat by appellee Odessa Union Warehouse Co-op ("Odessa"). The complaint alleged repeated violations of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331(a), 342(a)(3) & (4). The district court denied the government's motion for a preliminary injunction and the government appeals. Because we conclude that the district court applied an erroneous legal standard in denying the injunction, we reverse the decision and remand the case to the district court to exercise its discretion in light of the correct standard.

## BACKGROUND

In April 1986, the government conducted extensive inspections of thirteen grain elevators operated by Odessa in eastern and central Washington. The inspections revealed violations of the food contamination and adulteration standards of the FDCA.[1]

1. Section 301 of the FDCA provides: "The following acts and the causing thereof are hereby prohibited: (a) the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a) (1982). Food is deemed adulterated "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been ... held under insanitary conditions whereby it may have become contaminated with filth...." 21 U.S.C. § 342(a)(3) & (4) (1982).

The condition of Odessa's wheat at the time of the FDA inspection is uncontested. The wheat in the Odessa-operated elevators was moldy and contaminated with live and dead insects, insect larvae and rodent excreta. Various structural defects allowed for entry of rodents and birds at six of the storage stations.

Prior FDA inspections of Odessa facilities had also revealed unsanitary conditions. In May 1985, inspections showed live insect infestation at each of seven facilities. Two stations contained rodent excreta on the grain-conveying equipment. In 1983 and 1984, the Washington State Department of Agriculture, under contract with the FDA, inspected Odessa's storage facilities and discovered significant sanitary problems. As a result of those inspections, the FDA had imposed embargoes on thousands of bushels of wheat under Odessa's control.

As a result of the April 1986 inspections, the government sought a preliminary injunction to enjoin the sale and movement of wheat held in Odessa's elevators until Odessa complied with FDCA standards. In response to the filing of the injunction action by the government, and prior to the September 1986 district court hearing, Odessa took action to improve the sanitation at its facilities. Odessa's general manager testified that Odessa cleaned and fumigated the wheat, removed rodent and bird excreta from the wheat's surface, destroyed rodent tunnels, and sealed the elevators to prevent future infestation. In addition, Odessa hired a sanitation expert to recommend additional sanitation policy and procedures.

The district court, applying a standard we will set forth below, denied the government's motion for a preliminary injunction.

## STANDARD OF REVIEW

A district court's order granting or denying a motion for a preliminary injunction will be reversed only if the district court relied on erroneous legal premises, or on clearly erroneous findings of fact, or otherwise abused its discretion. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987).

## DISCUSSION

### 1. *Standard for Issuing a Preliminary Injunction*

■ The factors we traditionally consider in determining whether to grant a preliminary injunction in this circuit are (1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief. *Dollar Rent A Car of Washington Inc. v. Travelers Indemnity Company*, 774 F.2d 1371, 1374 (9th Cir. 1985). To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314–15 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

### 2. *Statutory Injunctions*

The motion for preliminary injunction in this action was brought by the government pursuant to the FDCA.[2] That fact unquestionably affects the balance of factors that determines whether an injunction should be granted. The function of a court in deciding whether to issue an injunction authorized by a statute of the United States to

---

**2.** 21 U.S.C. § 332(a) (1982) states in pertinent part: "The district courts of the United States and the United States Courts of the Territories shall have jurisdiction, for cause shown ... to restrain violations of section 331 of this title...."

enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants. *United States v. Diapulse Corp.*, 457 F.2d 25, 27 (2d Cir.1972). This is not to say that the violation of a federal statute automatically requires a district court to issue an injunction. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982); *TVA v. Hill*, 437 U.S. 153, 193, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978). The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case. *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). However, the fact that a federal statute is being enforced by the agency charged with that duty may alter the burden of proof of a particular element necessary to obtain injunctive relief. *See Navel Orange Admin. Comm. v. Exeter Orange Co.*, 722 F.2d 449, 453 (9th Cir.1983); *American Fruit Growers v. United States*, 105 F.2d 722, 725 (9th Cir.1939). Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the courts to enforce them when asked. *TVA v. Hill*, 437 U.S. at 194, 98 S.Ct. at 2302.

### 3. *The District Court's Standard*

The district court in this case applied neither the conventional balancing test prescribed in *Benda* and its progeny, nor the glosses on that test that arise from the fact that a federal agency is seeking to enforce an act of Congress. Instead, the district court announced the following standard:

> "The teachings of the appellate courts list several of these conditions, but Federal judges being an independent group, this Court has developed his own list of conditions and feels that a preliminary injunction should issue only when the circumstances truly permit no other course, when the crisis is current or at least appears to be recurrent, that the response of the respondent is recalcitrant

and clearly so, and that the total impact of the Order must be assessed."

Applying this standard, the district court denied the preliminary injunction on the grounds that Odessa was making improvements in its unsanitary conditions and that the granting of injunctive relief might put Odessa out of business and adversely affect the local agricultural economy.

The standard announced and applied by the district court is far too restrictive, compared with the standards for statutory injunctions set forth above. For example, the district court would only issue an injunction "when the circumstances truly permit no other course." That requirement of extreme necessity far exceeds the balance to be struck under *Benda*, 584 F.2d at 314–15, or *Navel Orange*, 722 F.2d at 453. There are other distortions inherent in the district court's legal standard. We discuss them in turn.

### 4. *Irreparable Injury*

To obtain a preliminary injunction, the movant must ordinarily show that there exists a significant threat of irreparable injury. *See American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir.1985). The district court may have imposed a variant of this requirement in insisting upon the existence of a "crisis." Whether or not the variant is a sufficient substitute is beside the point because the requirement itself is inapplicable to this case. Where an injunction is authorized by statute, and the statutory conditions are satisfied as in the facts presented here,[3] the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury. *Navel Orange*, 722 F.2d at 453; *See SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir.1975). No specific or immediate showing of the precise way in which violation of the law will result in public harm is required. *Diapulse*, 457 F.2d at 28. The district court accordingly should have presumed that the government

---

**3.** Both sides concede that the wheat at issue was adulterated within the meaning of 21 U.S.C. §§ 331(a) and 342(a)(3) & (4) (1982).

would suffer irreparable injury from a denial of its motion.

### 5. *Success on the Merits*

■ A second element of the test for issuance of a preliminary injunction is the moving party's probable success on the merits. *Benda,* 584 F.2d at 314. However, the required degree of probable success on the merits decreases as the likelihood of irreparable harm increases. *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 939 (9th Cir.1987); *Oakland Tribune,* 762 F.2d at 1377. Because irreparable injury must be presumed in a statutory enforcement action, the district court needed only to find some chance of probable success on the merits. The record indicates that there is a substantial likelihood of success on the merits in this action given the uncontested evidence that Odessa remained in violation of the FDCA up until the September 1986 hearing, despite its efforts to improve sanitary conditions. Had the district court applied the correct standard, the government's likelihood of success on the merits and the presumptive finding of irreparable injury would have met the first test for issuance of a preliminary injunction. *Benda,* 584 F.2d at 314.

### 6. *Balance of Hardships*

■ The only element of either test set forth in *Benda* to be found in the standard applied by the district court was the balancing of hardships that would result from the issuance of a preliminary injunction. However, the record suggests that the district court considered only the potential hardship facing Odessa and the local agricultural business. The public interest is an important consideration in the exercise of equitable discretion in the enforcement of statutes. *See Amoco Production Co. v. Village of Gambell, Alaska,* — U.S. —, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987). Regardless of the fact that some contamination of stored wheat may be common or even inevitable, the public still has a strong interest in consuming unadulterated wheat. *See Smith v. California,* 361 U.S. 147, 152, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959) (the usual rationale behind food and drug legis-lation is that "the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors"). There is no indication that the district court considered the hardship to be faced by the general public in the absence of injunctive relief—namely, the sale and movement of contaminated and adulterated food into interstate commerce. *See Dollar Rent A Car,* 774 F.2d at 1374. That element must be weighed in the balance of hardships on remand.

### 7. *Likelihood of Recurring Violations*

The district court appears to have held that the danger of recurring violations was insufficient to justify an injunction in light of Odessa's efforts to improve the conditions at its facilities. Certainly Odessa's progress towards improvement and the credibility of its stated intention to comply with FDCA requirements in the future are relevant to the district court's factual determination of whether violations are likely to continue or recur. *See, e.g., SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir.1980). On the other hand, the district court must weigh Odessa's continuing sanitation problems in light of its extensive history of violations, since an inference arises from Odessa's past violations that future violations are likely to occur. *SEC v. Koracorp Industries, Inc.,* 575 F.2d 692, 698 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). Moreover, cessation of violations does not itself foreclose issuance of an injunction. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982); *United States v. Parke, Davis & Co.,* 362 U.S. 29, 47–48, 80 S.Ct. 503, 513–14, 4 L.Ed.2d 205 (1960). Courts must beware of attempts to forestall injunctions through remedial efforts and promises of reform that seem timed to anticipate legal action, especially when there is the likelihood of recurrence. *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952). Thus, serious questions remain as to whether Odessa's improper sanitary practices will recur or continue in

the absence of the injunctive relief sought by the government. Those questions can be addressed by the district court upon remand.

## CONCLUSION

In exercising its equitable discretion the district court must be guided by the "well-established principles governing the award of equitable relief in federal courts." *Amoco Production,* 107 S.Ct. at 1402. The principles that apply to requests for preliminary injunctions in this circuit are well-established. *Dollar Rent A Car,* 774 F.2d at 1374–75; *Benda,* 584 F.2d at 314–15. So is the presumption of irreparable harm arising from failure to enforce a federal statute intended to protect the public. *Navel Orange,* 722 F.2d at 453. Because the district court erroneously applied its own set of conditions in denying the government's motion, and because the record indicates that the government may qualify for a preliminary injunction under this circuit's standards, the district court's order must be reversed and remanded for reevaluation under the correct standards.

REVERSED AND REMANDED.