**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1616, et al., Plaintiffs,**

v.

**Richard L. THORNBURGH, Attorney General of the United States, et al., Defendants.**

No. C–88–20729–WAI.

United States District Court, N.D. California.

Jan. 5, 1989.

Cliff Palefsky, McGuinn, Hillsman & Palefsky, San Francisco, Cal., Mark D. Roth, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for plaintiffs.

George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., Mary E. Goetten, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## ORDER

INGRAM, Chief Judge.

The plaintiffs' motion for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, came on regularly for hearing on December 6, 1988. The defendants have also submitted a Supplemental Notice of Recent Decision (filed Dec. 30, 1988). Upon consideration of the argument of counsel and all the papers submitted, the motion is GRANTED, for reasons set forth below.

### I. *Background*

On September 15, 1986, President Ronald Reagan signed Executive Order No. 12564, Fed.Reg. 32,889–93 (Sept. 17, 1986) (Executive Order), requiring the establishment of drug testing programs in federal agencies for government employees in sensitive positions. Congress subsequently passed legislation (Act) affecting the implementation of these drug testing programs under the Executive Order. *See* Section 503 of the Supplemental Appropriations Act of 1987, Pub. L. 100–71, 101 Stat. 391, 468–71 (codified at 5 U.S.C. section 7301 note). Among other agencies, the Immigration and Naturalization Service (INS) was expressly exempted under section 503(b)(1) of this Act, which was signed into law by the President on July 11, 1987. Pursuant to the Executive Order and Act, on September 25, 1987, the United States Department of Justice (DOJ) established the "DOJ Drug–Free Workplace Plan" (DOJ drug testing plan), which was amended on December 17, 1987. The DOJ drug testing plan authorized the INS to implement its own program for drug testing, which was issued on March 17, 1988 as the "INS Drug Free Workplace–Applicant and Employee Drug Testing Program" (INS drug testing plan).[1] Both the DOJ plan and the INS plan, which incorporates by reference the DOJ plan, utilize the scientific and technical testing procedures promulgated by the Department of Health and Human Services. *See* 53 Fed.Reg. 11,-970 (Apr. 11, 1988). On July 8, 1988, the Commissioner of the INS issued sixty-days notification to all INS employees that drug testing would be implemented under the terms of the DOJ and INS drug testing plans. Employees holding "testing designated positions" who would be subject to random testing received an additional thirty-days notice on September 8, 1988. In light of the pending motion, INS employees have not been subjected to urinalysis testing under either plan.

Both the INS and DOJ plans provide for six forms of urinalysis testing: (1) random testing, (2) reasonable suspicion testing, (3) applicant testing, (4) accident or unsafe practice testing, (5) voluntary testing, and (6) follow-up testing. The plaintiffs do not contest the second, third, fifth and sixth elements.

---

1. The plaintiffs also initially sought to enjoin a similar U.S. Marshals Service drug testing plan. However, this aspect of the motion was withdrawn because the 60–day notice under the Marshals' plan had not yet issued.

Under the INS drug testing plan, approximately sixty percent of all INS employees would fall under the random testing element.[2] These employees are listed under fifteen classes of designated positions: (1) special sensitive [involving approximately 12 positions], (2) national security information access clearance [350], (3) security work [20], (4) top level management [340], (5) law enforcement [5,198], (6) other law enforcement [205], (7) intelligence [40], (8) immigration examinations [1,127], (9) immigration inspections [2,205], (10) health and safety [24], (11) equipment operation and maintenance [220], (12) financial commitment and monies handling [57], (13) computer and communications systems [100], (14) attorney [215], and (15) miscellaneous [6]. *See* Plaintiffs' Moving Brief, Exh. E, at E–10 (filed Sept. 27, 1988). Of the estimated total of 10,119 INS employees subject to random urinalysis under the INS drug testing plan, more than half, or fifty-three percent, are in law enforcement or other law enforcement, nearly twenty-two percent are in immigration examinations, and eleven percent are in immigration inspections positions. Fourteen percent comprise the remaining designated INS categories.

Urinalysis for post-accident testing is required under the DOJ drug testing plan, at 16, as follows:

Any employee involved in an accident or unsafe practice while on duty may be directed to take a drug test as part of an authorized examination into the accident or unsafe practice, and pursuant to criteria established by the Component Head.

Under the INS drug testing plan, at 4, post-accident testing is required under these circumstances:

Employees involved in on-the-job accidents or who engage in unsafe on-duty job-related activities that pose a danger to others or the overall operation of the [INS] may be subject to testing. Based on the circumstances of the accident or unsafe act, the immediate or higher-level supervisor may initiate testing when:

1. an accident/unsafe act involves personal injury or death;

2. the same employee has more than one accident/unsafe act during a twelve month period; or

3. the accident/unsafe act results in more than $2,000 damage.

Five drugs or drug classes are to be screened under the INS drug testing plan, at 5, including amphetamines, cocaine metabolites, opiates (morphine/codeine), phencyclidine (PCP), and marijuana metabolites. The INS may also expand this list under the plan.

Under both the INS and DOJ drug testing plans, an employee found to use illegal drugs will be subject to disciplinary action, including written reprimand, placement in enforced leave status upon the request of the employee, suspension, or removal. The disciplined employee shall also be referred to an employee assistance program for assessment, counseling, and referral for treatment or rehabilitation.

Seven plaintiffs were named in the Complaint (filed Sept. 23, 1988): (1) American Federation of Government Employees (AFGE), Local 1616, AFL–CIO (Local 1616), the bargaining representative of union member INS employees residing within the Northern District of California, (2) AFGE National INS Council, 117, a bargaining representative of union member INS employees nationwide, (3) AFGE National Border Patrol Council, a bargaining representative of union member Border Patrol employees nationwide, (4) AFGE U.S. Marshals Service Council, a bargaining representative of union member U.S. Marshals Service employees nationwide, (5) Anthony D. Lazalde, an INS Deportation Officer and president of Local 1616, (6) Lorna L. Buster, an INS Immigration Examiner and member of Local 1616, and (7) Ernesto D. Smith, an INS Retention Officer and member of Local 1616. Each of the individual

---

**2.** This calculation is based on the 10,119 designated positions subject to random testing, Plaintiffs' Moving Brief, Exh. E, at E–10 (filed Sept. 27, 1988), and approximately 16,685 INS employees, noted in the Office of Personnel Management Workforce Statistics (cited in Plaintiffs' Reply Brief, at 2 n. 2 (filed Oct. 21, 1988)).

plaintiffs would be subject to random drug testing.

There are five defendants: (1) Richard L. Thornburgh, Attorney General of the United States, (2) Alan C. Nelson, Commissioner of the INS, (3) David N. Ilchert, Director of the INS District Office in San Francisco, California, (4) Stanley E. Morris, Director of the U.S. Marshals Service, and (5) Glen E. Robinson, U.S. Marshal for the Northern District of California.

The plaintiffs move for a preliminary injunction to enjoin (1) the DOJ from enforcing the DOJ drug testing plan on INS employees and (2) the INS from enforcing the INS drug testing plan, contending that these plans involve warrantless searches lacking particularized suspicion in violation of the Fourth Amendment and that the drug testing plans also violate provisions of the Rehabilitation Act of 1973, the Civil Service Reform Act, and the Administrative Procedures Act.[3] This motion is comparable to one recently considered by this court involving a similar Veterans Administration drug testing plan. *See AFGE v. Turnage,* C–88–20357–WAI (N.D.Cal. Nov. 7, 1988).

## II. *Analytical Framework*

It is well-settled in this circuit that a party seeking a preliminary injunction must establish either:

> (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. (citations omitted). These are not separate tests, but the outer reaches "of a single continuum."

*Los Angeles Memorial Coliseum Com'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980) (quoting *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers,* 584 F.2d 308, 315

---

**3.** As a result of the disposition reached in this Order, it is not necessary for the court to consider the statutory issues raised at this stage of the litigation.

**4.** Ultimately, the two Supreme Court drug testing rulings to be decided this Term in *Burnley*

(9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)).

It is also established that urinalysis testing involves a search under the Fourth Amendment. *See Turnage,* C–88–20357–WAI, slip op. at 4–5 (noting numerous cases so holding). The legal analysis for evaluating drug testing cases in this circuit under the Fourth Amendment is currently governed by *RLEA v. Burnley,* 839 F.2d 575 (9th Cir.1988), *cert. granted,* —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988).[4] The central issue concerns the reasonableness of the search as measured by the balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987). This "reasonableness" analysis is undertaken by the application of a two-prong test: (1) the search must be justified at inception and (2) must be reasonably related in scope to the circumstances justifying the search in the first place. *Burnley,* 839 F.2d at 587 (citations omitted). The Ninth Circuit has also imposed a requirement of particularized suspicion for urinalysis testing of drug use. *Id.* at 588. *See also AFGE v. Meese,* 688 F.Supp. 547, 553 (N.D.Cal.1988) (noting requirement of reasonable individualized suspicion of drug use in compulsory blood and urine testing).

## III. *Discussion*

In evaluating the nature and the quality of the intrusion, the court first notes that the collection and analytical processes proposed under a similar drug testing plan for the federal Bureau of Prisons of the DOJ were found to be "highly intrusive." *See Meese,* 688 F.Supp. at 551–52. A comparable plan as to the one before the *Meese* court, utilizing similar methods of urinalysis collection and testing and which was

---

and *National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 175 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988), may provide the standard to be applied in the drug testing cases before this court.

adopted pursuant to the same Executive Order and DOJ drug testing plan, is now before this court. Accordingly, there appears to be no reason to depart from the finding that urinalysis testing is highly intrusive. *See also Jones v. McKenzie,* 833 F.2d 335, 339 (D.C.Cir.1987) (noting that "such tests may provide Government officials with a periscope through which they can peer into an individual's behavior in her private life, even in her own home"). Against this significant invasion of privacy resulting under the urinalysis search, the defendants assert that the government has a compelling interest in (1) safety, (2) fulfilling its drug interdiction mandate, (3) prevention of corruption, (4) rehabilitation, and (5) general deterrence.

Initially, the court notes that the random testing, involving more than 10,000 designated INS employees, is much broader than the post-accident testing program found to violate the Fourth Amendment requirement of individualized suspicion before the Ninth Circuit in *Burnley.* By definition, random testing excludes a requirement of particularized suspicion.[5] Moreover, the drug testing plans before this court are not limited to a measurement of job impairment, as in *Burnley,* but instead are designed to determine whether an INS employee is using illegal drugs either on- or off-duty. One serious apprehension over the proposed wide-scale urinalysis testing is that it may be utilized to observe, whether intentionally or not, the private activities of government employees. *See Jones,* 833 F.2d at 339 (noting similar concerns).

In considering whether "there are reasonable grounds for suspecting that the search will turn up the evidence sought," *Burnley,* 839 F.2d at 587, the defendants have failed to present sufficient objective evidence to justify the necessity of urinalysis testing which lacks particularized suspicion. The defendants concede in their Opposition Brief, at 6 (filed 14, 1988), that "the frequency of illegal drug use by INS employees cannot be precisely known in the absence of an accurate evaluation tool such as random analysis." *See also* Declaration of INS Associate Commissioner H.F. Sylvester, para. 16 (filed Oct. 14, 1988) (noting that "[d]ue to the nonobservable nature of much illegal drug impairment, prior to the implementation of the INS [drug testing plan], there is no comprehensive means of assessing employee involvement with illegal drugs or drug-related offenses"). Based on the proof before the court, there is no basis to conclude that illegal drug use is a current or potential problem or that it is interfering with the stated government objectives. Part of the defendants' argument in support of the drug testing plans is founded on the national problem of illegal drug use. However, the national situation cannot justify the random search at its inception of INS employees in designated positions. In the Declaration of INS Associate Commissioner H.F. Sylvester, para. 16, the defendants note that there are currently ninety-three criminal investigations of INS employees related to illegal drug use or drug-related activity. However, the defendants have supplied only eleven incidents during the past two years from the INS Office of Professional Responsibility concerning illegal drug misconduct. These present investigations, on which little information is provided as a result of their pending nature, and the eleven instances therefore constitute the scope of the purported current illegal drug use problem among INS employees, according to the showing made by the defendants. Not all of these incidents appear to involve designated INS employees who would necessarily be subject to random or post-accident urinalysis testing. It is also not clear whether all of the illegal drugs involved in these incidents include those which would have been detected under the INS drug testing plan.

---

5. The DOJ drug testing plan, at 5, provides the following definition:

Random testing means mandatory testing imposed without individualized suspicion that a particular individual is using illegal drugs. Random testing includes either uniform-unannounced testing of every employee occupying a testing designated position or a statistically random sampling of individuals occupying testing designated positions based on neutral criterion, such as social security numbers.

This definition is also adopted in the INS drug testing plan, at 2.

Based on this tenuous presentation, the averred problem of illegal drug use among INS employees does not appear to be the "recognized" problem which the defendants suggest.

As to the government's interest in safety, the defendants have failed to make a compelling showing that a safety problem resulting from illegal drug use currently exists among the INS employees to be randomly tested. Moreover, the defendants have not demonstrated whether the proposed testing may adequately measure current impairment or if certain minimal safety levels are being maintained on-the-job. It is also not clear how the testing for off-duty use of illegal drugs may measure on-the-job safety. In the absence of such a showing, the safety interests advanced cannot be significant. Further, not all of the designated testing positions for random testing appear to implicate safety concerns. *Compare Jones*, 833 F.2d at 340 (noting *"serious* safety concerns" in transporting handicapped children to and from school in a program for mandatory urinalysis of employees in the District of Columbia Public School System Transportation Branch) (emphasis in original), *with Meese*, 688 F.Supp. at 553 (noting the failure to present evidence "indicating that ... drug-related safety problems exist or have existed") (emphasis omitted).

An insufficient showing has also been made that drug interdiction efforts are currently impeded by the use of illegal drugs by INS employees. In implementing the laudable role of drug interdiction at the borders, it is not clear from the papers before the court how extensive, if at all, the purported illegal drug use problem is among the designated INS employees at the border. The defendants have not asserted that present rehabilitation programs are inadequate and that random drug testing is needed to advance effective rehabilitation of INS drug users. Less restrictive alternatives may be available. There is also no justification for the deterrence interest where no substantial drug use problem among INS employees has been presented. It has not been established that corruption may be discouraged by the pro-

posed drug testing plans. The defendants make the unsupported contention that INS employees who use illegal drugs may be more prone to corruption. *See, e.g., Meese,* 688 F.Supp. at 554 (noting the failure "to present any evidence that this perceived danger is anything but speculative") (emphasis omitted). While each of these government interests are concededly important, the defendant have not met their "heavy burden," *id.* at 553, to justify the significant intrusion in privacy which would be caused by the commencement of random urine tests. In sum, reasonable grounds have not been presented to suspect that the random searches will turn up evidence that INS employees have violated the DOJ and INS drug testing plans.

The court is particularly concerned over the scope of the proposed testing to include off-duty use of illegal drugs. The defendants have not demonstrated the justified nature of the search at its inception where drug testing plans are intended to measure illegal drug use that may occur off-duty and may not impair job performance. The Fourth Amendment requirement of particularized suspicion does not countenance drug testing of designated INS employees to attack the broader societal problem. Additionally, the defendants have not persuaded the court that the proposed testing for off-duty illegal drug use is warranted to justify the significant intrusion of the search in order to redress purported inconsistencies in the roles of some of the existing designated INS employees. It is entirely a different matter to make the abstinence of illegal drug use a precondition of future employment. *See, e.g., National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir.1987) (upholding one-time testing for Customs Service employees who voluntarily seek employment-transfers in covered positions). Perhaps for this reason, the plaintiffs do not challenge the applicant testing form of urinalysis under the INS and DOJ drug testing plans. Accordingly, this court concludes that the random searches have not been justified at their inception.

With regard to accident or unsafe practice testing, the present law of the Ninth Circuit is that "particularized suspicion is essential to finding toxicological testing of [INS] employees justified at its inception. Accidents, incidents or rule violations, by themselves, do not create reasonable grounds for suspecting that tests will demonstrate alcohol or drug impairment in any one [INS] employee...." *Burnley*, 839 F.2d at 587. Even purported considerations of safety, as here, do not overcome the burden of individualized suspicion. *Id.* at 588. In the absence of any showing of particularized suspicion by the defendants, the post-accident testing component of the drug testing plans violates the Fourth Amendment requirement for reasonable searches.

The defendants also try to argue the applicability of the administrative search exception to the Fourth Amendment. *See New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601, 614 (1987). However, the regulated industry exception applies where "warrantless searches are necessary to the accomplishment of the regulatory scheme and when the very existence of the federal regulatory program diminishes the reasonable expectations of privacy of those involved in the industry." *Von Raab*, 816 F.2d at 179. As the Ninth Circuit has noted, the decisions applying the administrative inspection exception "have upheld warrantless searches of property, not of persons." *Burnley*, 839 F.2d at 584. Here, the defendants have not indicated which regulations have allegedly diminished the expectations in privacy of INS employees and whether there is a nexus between the regulations and the lowered expectations. Therefore, on the papers and argument submitted, the defendants have

not demonstrated that "the employees are the principal concern of the ... regulation," *id.* at 585. *See also Hansen v. Turnage*, No. C–88–20361–WAI, slip op. at 7–8, 1988 WL 147881 (N.D.Cal. July 28, 1988) (Aguilar, J.) (rejecting application of administrative search exception to drug testing plan in the Veterans' Administration).[6]

Upon consideration of all the papers and the argument of counsel, this court concludes that the random and post-accident testing under the DOJ and INS drug testing plans fail to satisfy the standard of reasonableness imposed by the Fourth Amendment because the urinalysis searches have not been shown to be justified at their inception. Like the court in *Meese*, 688 F.Supp. at 554, this court must insist "upon hard evidence to support the [government's] claim that the dangers are real and not speculative." While the court agrees with the defendants that "[t]here are cases in which compulsory drug testing may be justified," Opposition Brief, at 21 (filed Oct. 14, 1988) (quoting *Meese*, 688 F.Supp. at 548), based on the evidence before this court, the defendants have not presented such a case, for the reasons already stated. For example, this court has not passed review on the reasonable suspicion, applicant, voluntary, and follow-up testing elements of the proposed drug testing plans, which the court notes, without deciding, may satisfy the reasonableness standards imposed under the Fourth Amendment. With regard to random and post-accident testing, however, the justifications proffered fall short of the compelling showing necessary given the high level of invasion under the search and the breadth of the program, encompassing sixty percent of INS employees and including

---

6. The defendants have also filed a copy of *Uniformed Division Officers Local 17 v. Brady*, No. C–88–3377, 1988 WL 89007966 (D.D.C. Nov. 21, 1988), where a motion for preliminary injunction was denied in the face of a Fourth Amendment challenge to random drug testing of uniformed Secret Service officers. This case is inapposite. First, the drug testing program in *Brady* had already commenced before injunctive relief had been sought. *See id.* at 21 n. 33. Accordingly, a denial of the motion constituted a preservation of the status quo. Moreover, a significant compelling interest of protecting constitutional officers and other individuals, *id.* at 12, outweighed the legitimate privacy interests of the Secret Service employees. There is no such compelling government interest presented before this court. Finally, the Secret Service officials were found to subject themselves as employees to significant intrusions "far more invasive than those made on the average government employee, reflecting the serious responsibilities vested in these officers." *Id.* at 18.

a search into off-duty activities. Because this court concludes that the first prong of the reasonableness analysis under the Fourth Amendment has not been established under the plan as presented, this court need not apply the second element that the search be related in scope.

Based on the foregoing, the court finds that the plaintiffs have demonstrated a likelihood of success on the merits because the proposed urinalysis random and post-accident searches have not been shown to be justified at the inception. Further, the plaintiffs have shown a significant possibility of irreparable injury by the resulting infringement of individual privacy from the urinalysis searches without particularized suspicion. *See, e.g., Zepeda v. INS,* 753 F.2d 719, 727 (9th Cir.1983) (irreparable injury met by establishing violations of fourth amendment rights could not be compensated by money damages if proven); *NORML v. Mullen,* 608 F.Supp. 945, 963 (N.D.Cal.1985) (injunctive relief available "to prevent continuing irreparable harm in the form of violations of [plaintiffs'] constitutional rights"), *aff'd in part and remanded in part,* 796 F.2d 276 (9th Cir. 1986). The court also concludes that the balance of hardships tips decidedly toward the plaintiffs. The government has not adequately demonstrated any resulting harm by the possible delay in the implementation of the drug testing plans pending a full trial on the merits. In contrast, the privacy rights of the plaintiffs may be infringed by urinalysis testing which has not been justified at its inception. Moreover, as in *Turnage,* slip op. at 8, the status quo should be maintained in light of the two pending drug testing cases before the Supreme Court.

The court notes that the defendants have not sought the posting of a bond and this court determines, pursuant to Fed.R.Civ.P. 65(c), that no security need be set.

The defendants are enjoined from conducting random or post-accident urinalysis testing on INS employees under either the INS or DOJ drug testing plans. This injunction is binding on defendants, their officers, agents, servants, employees and attorneys, as well as upon those persons in active concert or participation with them or any of them, who receive actual notice hereof by personal service or otherwise.

## IV. *Conclusion*

For the foregoing reasons, the motion for preliminary injunction is GRANTED.

IT IS SO ORDERED.