AMERICAN FRUIT GROWERS, Inc., v. UNITED STATES.

No. 9057.

Circuit Court of Appeals, Ninth Circuit. July 24, 1939.

Rehearing Denied Sept. 22, 1939.

W. H. Wadsworth and John H. Mathews, both of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Irl D. Brett, Asst. U. S. Atty., both of Los Angeles, Cal. (A. D. Hadley, Atty. U. S. Dept. of Agriculture, of San Francisco, Cal., of counsel), for the United States.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from a decree granting an injunction pendente lite against appellant in a suit brought by appellee to restrain violation of an order made by the Secretary of Agriculture under the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 601 et seq.

Section 2 of the Agricultural Adjustment Act (Act of May 12, 1933, 48 Stat. 32, 7 U.S.C.A. § 602) declares it to be the policy of Congress, among other things, to maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish commodity prices at a level which will give them a purchasing power equivalent to such power

in the "base" period, which was fixed as between 1909 and 1914, but changed to a later period by the Secretary of Agriculture, pursuant to 7 U.S.C.A. § 608e.

The Secretary of Agriculture is authorized to issue orders applicable to handlers of agricultural commodities, including oranges. 7 U.S.C.A. § 608c(1) and (2). He is required to "give due notice of and an opportunity for a hearing upon a proposed order". 7 U.S.C.A. § 608c(3). Several options as to the content of the order are specified in 7 U.S.C.A. § 608c(6) (A) to (E), of which the Secretary of Agriculture chose (C), which requires an order to contain a provision—"Allotting, or providing methods for allotting, the amount of any such commodity * * * which each handler may market in or transport to any or all markets in the current of interstate or foreign commerce * * * under a uniform rule based upon the amounts which each such handler has available for current shipment * * * to the end that the total quantity of such commodity * * during any specified period or periods shall be equitably apportioned among all of the handlers thereof." The Secretary of Agriculture is also authorized to select an agency to administer, and to make rules and regulations to effectuate the terms, of such order. 7 U.S.C.A. § 608c(7) (C).

Violators of the order are, on conviction, subject to a fine of from $50 to $500 for each violation, and each day during which a violation continues is deemed to be a separate violation. 7 U.S.C.A. § 608c (14). That provision is directly applicable to the order in question. Section 608a(6) is relied on as authority for the injunction, which provision is: "The several district courts of the United States are hereby vested with jurisdiction specifically to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement, heretofore or hereafter made or issued pursuant to this chapter, in any proceeding now pending or hereafter brought in said courts."

Subdivision (8) of the same section provides: "The remedies provided for in this section shall be in addition to, and not exclusive of, any of the remedies or penalties provided for elsewhere in this chapter or now or hereafter existing at law or in equity."

On September 24, 1935, the Secretary of Agriculture gave notice of a hearing to be held on October 9, 1935, regarding a proposed order regulating the handling of oranges and grapefruit grown in California and Arizona. At the hearing, the question as to whether the estimated quantity at the beginning of the season should be the basis for weekly prorate orders, or whether the estimated quantity at the beginning of the weekly period should be the basis for weekly prorate orders was considered. The order in question, known as Order No. 2, was issued January 4, 1936, effective January 13, 1936.

Order No. 2 contained certain findings, among them being finding 16 wherein it was found that a more stabilized market and less fluctuations in prices to growers would be brought about by "regulation of the quantity of said oranges and grapefruit from week to week, as prescribed by this order" and in finding 17, it was found that "curtailment of the season total shipments of said commodities can be effected by regulating the weekly quantities of said commodities shipped during the season".

Subdivision 1 of Section 1 of Art. II of the order provided that it was to be administered by an agency, known as the California-Arizona Orange Grapefruit Agency, which consisted of the Growers Advisory Committee and the Distribution Committee. Section 1 of Art. III provides in part: "The Distribution Committee shall find and determine for each week the quantity of weekly shipments of each variety of fruit deemed by it advisable to be shipped and to be prorated in view of the prospective effective demand in the market areas. In making such determination, the committee shall give due consideration to the following factors: * * * (2) fruit on hand in the market areas as evidenced by supplies enroute and on track at the principal markets, (3) available supply of fruit in the producing area * * *"

Subdivision 1 of section 2 of Art. III of the order provides that to obtain allotments and a prorate base, every shipper shall submit written applications therefor to the Growers Advisory Committee. Subdivision 3 of § 2 of Art. III of the order provides in part: "Every shipper applying for allotments and a prorate base shall, from time to time, and as required by the Growers Advisory Committee, submit to said committee estimates of the fruit by varieties which he controls during the current shipping season * * * The estimates shall be based on fruit eligible for

sale during the current shipping season * * *"

Subdivision 4, § 2, Art. III of the order provides that the Growers Advisory Committee shall check the accuracy of applications and estimates and correct errors. Subdivision 5, § 2, Art. III of the order, provides: "The prorate base for each shipper, and for each grower who applies for allotments and a prorate base, shall be the ratio which the quantity of each such shipper's or grower's variety of fruit, reported and revised as required by this section, bears to the total crop of the same variety of fruit grown in the states of California and Arizona eligible for sale as defined in subsection 3 of this section and as determined from time to time by the Growers Advisory Committee * * *"

Subdivisions 7 and 8, § 2, Art. III of the order provide for establishment of separate prorate districts, and for prorate bases and allotments therein, in substantially the same manner as stated above.

Subdivision 1, § 3, Art. III of the order provides for approval by the Secretary of Agriculture of the prorate bases determined by the Growers Advisory Committee, and subdivision 2 of the same section provides for approval by the Secretary of Agriculture of "the quantity of each variety of fruit deemed advisable to be shipped for any week". Subdivision 3, § 3, Art. III of the order provides in part: "Thereupon the Secretary shall fix the weekly allotment for each shipper, or grower who has applied for allotments, by signing, in addition to his approvals of the determination of the weekly shipments and of the prorate bases, a direction that the weekly allotments for every applicant shall be the * * product of each applicant's district prorate base and the total shipments allocated to such prorate district * * *"

On August 13, 1938, the Secretary of Agriculture made prorate order No. 111, fixing prorate bases, including that of appellant, for the week of August 14, 1938 to August 20, 1938, and allotments for that week. Appellant's allotment was fixed at 23,993 packed boxes, which was subsequently adjusted to 21,085 packed boxes. Appellant, in fact, shipped 33,273 packed boxes.

On September 1, 1938, appellee filed the bill before us to restrain appellant from "the handling of oranges in violation of the provisions" of the order. It pleaded the facts above stated, and that appellant "at divers times since the effective date of the order, has failed and refused, and is now failing and refusing, to comply with the terms of the order, and has indicated that it will violate the provisions thereof in the future". It was also alleged that the effect of appellant's violation of the order "has been to impair the effectiveness of the program inaugurated by the order regulating the handling of oranges * * * to disrupt and obstruct interstate commerce and foreign commerce * * * to render partially ineffective the lawful regulation of such commerce, as provided in the act and order * * *" Appellant's answer alleged, as separate defenses, that the bill failed to state facts sufficient to constitute a cause of suit, and that the prorate order was void because in conflict with the provisions of the act, and Order No. 2. The court below granted the injunction pendente lite, and appellant appealed.

■ Appellant contends that the allegations of irreparable injury to the United States are conclusions of law, and that no facts are pleaded which show irreparable injury or that the United States has no adequate remedy at law. We think allegations of such facts were unnecessary, because of 7 U.S.C.A. § 608a(6). Congress apparently concluded that a violation of a valid order would cause irreparable injury, in that the theory expressed by the act required restriction on shipments and unless the fixed restrictions were complied with, the act would serve no purpose. By 7 U.S.C.A. § 608a(6) Congress authorized an injunction upon a showing of violation alone.

■ It is contended that the act (7 U.S.C.A. § 608c(6) (C) required the pro-rate base to be computed by using the quantity of fruit held by the handlers immediately preceding the week for which the allotment is made, in determining what proportion of the total allotment for such week, each handler might ship. The Secretary of Agriculture determined the pro-rate base by using the estimated quantity of the crop at the beginning of the season, and computed the proportion of the whole quantity which each handler controlled. That percentage is used to make the weekly allotments, by multiplying the total quantity permitted to be shipped in one week by each handler's

percentage or pro-rate base. The act provides that the allotment or method of allotment shall be made "under a uniform rule based upon the amounts which each such handler has available for *current* shipment". 7 U.S.C.A. § 608c(6) (C). Appellant's argument is based principally on the use of the word "current", asserting that it means the amount available for shipment during the week for which the allotment is made, and not the amount available for shipment in the beginning of the season.

Webster's New Int. Dict. (2nd Ed) defines "current" to mean "Now passing, as time, or belonging to the present time or season; as, the current month; current fashions". Art. III, § 2 of Order No. 2 adopted the seasonal meaning, for it uses the words "current shipping season" several times.

By 7 U.S.C.A. § 608c(6) (C) the Secretary of Agriculture may, after hearing, either make an allotment, or provide a method for allotment. By Order No. 2, the Secretary provided only a method. The provision of the act merely requires the allotment to be made "under a uniform rule". The rule adopted by the Secretary is uniform, in that all handlers are allotted a quantity by the same method or rule. The "uniform rule" is required to be "based upon the amounts which each such handler has available for current shipment". It is apparent, we think, that the rule had such a basis, for it was based upon the amounts which each such handler had available for current "seasonal" shipment.

Appellant further contends that the pro-rate order is void because not made in compliance with Order No. 2. Appellant argues that use of the words "from time to time" in Section 2 of Article III of Order No. 2 in connection with the estimate of the total quantity of all handlers, indicates that Order No. 2 contemplated that the pro-rate base would be fixed weekly and would be based on the total quantity available for shipment during that week. We do not so construe the order. Apparently the purpose of the order was to permit flexibility so that if a particular handler's total quantity increased or decreased the pro-rate base might be adjusted.

Affirmed.