**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**NUTRI–COLOGY, INC., d/b/a Allergy Research Group; Biocurrents, Inc.; Stephen A. Levine; Susan D. Levine, Defendants–Appellees.**

No. 91–16419.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 17, 1992.

Decided Dec. 29, 1992.

Jeffrica Jenkins Lee, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

J. Thomas Roch, Beth H. Parker, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for defendants-appellees.

Before: HUG, PREGERSON, and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

The government appeals the district court's denial of its motion for a preliminary injunction and its motion for reconsideration. The government sought to enjoin appellees Nutri-cology, Inc., also doing business as Allergy Research Group, Biocurrents, Inc., Stephen A. Levine, and Susan D. Levine (collectively "Nutri-cology") from distributing certain products, which the government contends are unapproved "drugs" or "new drugs" within the meaning of the Food, Drug and Cosmetic Act (the "FDCA"), 21 U.S.C. §§ 301–394. The district court found that the government had made a colorable showing that the products were unapproved "new drugs" and were being distributed in violation of 21 U.S.C. § 331(d). Nonetheless, the dis-

trict court found that the government failed to demonstrate irreparable harm and refused to issue a preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

## I. BACKGROUND

Nutri-cology distributes and promotes a number of products labelled as nutritional or dietary supplements. These products are allegedly promoted as useful to prevent and treat numerous diseases and conditions.

The Food and Drug Administration (the "FDA") began monitoring Nutri-cology's activities in 1982. The FDA notified defendants in writing—three times in 1982, twice in 1985, and twice in 1988—that the FDA considered Nutri-cology's products to be unapproved "drugs" and "new drugs" under the FDCA. The FDA also held two meetings with Nutri-cology's counsel, in 1982 and 1988, where the alleged violations of the FDCA were reiterated.

Since 1982, Nutri-cology has maintained that its products are not "drugs" or "new drugs," under the FDCA, but are herbs, oils, vitamins, and other "foods." The FDA sent its last communication to Nutri-cology on June 16, 1988. The government filed this action three years later on May 2, 1991.

On May 8, 1991, the district court granted the government's ex parte request for a temporary restraining order enjoining Nutri-cology from further marketing nine of its products, which constituted 80% of Nutri-cology's business.

On May 23, 1991, the district court denied the government's motion for a preliminary injunction. The district court applied the following preliminary injunction standard: " 'the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor.' " May 23, 1991 Order at 5 (quoting *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987)).

The district court made the following findings: (1) the government made a threshold evidentiary showing that Nutri-cology intended its products to be perceived as beneficial in preventing or treating diseases; (2) the government created some showing that Nutri-cology's products were "drugs" falling under the auspices of 21 U.S.C. § 321(g)(1)(B); and (3) the government made a colorable showing that Nutri-cology was violating 21 U.S.C. § 331(d) by marketing unapproved "new drugs." The court further concluded that a rebuttable presumption of irreparable harm arose from the colorable showing of an FDCA violation.

The district court then concluded that the presumption of irreparable harm was rebutted by Nutri-cology's extensive showing, through the petition signed by sixty physicians and nutritionists, in support of the merit and reliability of its products. Nutri-cology's showing was particularly persuasive because the government failed to demonstrate *any* harm to consumers. The district court found that two other factors weighed against granting the preliminary injunction: the FDA's nine-year delay in bringing the action, and the likelihood that an injunction would destroy Nutri-cology's business.

On July 19, 1991, the district court denied the government's motion for reconsideration. On September 10, 1991, the government filed its notice of appeal.

## II. TIMELINESS OF APPEAL

Under Fed.R.App.P. 4(a)(1), in a matter where the United States is a party, a notice of appeal must be filed within sixty days after the date of the order which is being appealed. The order appealed from in this case is the district court's denial of the preliminary injunction on May 23, 1991. Therefore, unless the time for filing the notice of appeal was tolled, the government was required to file its notice by July 22, 1991. Under Fed.R.App.P. 4(a)(4), certain motions made under Fed.R.Civ.P. 50(b), 52(b), and 59 toll the deadline for filing the notice of appeal. In connection with such motions, where the United States is a par-

ty, a notice of appeal must be filed within sixty days of the order disposing of the motion.

■ The government did not cite the rule that authorized its motion for reconsideration. The district court treated the government's motion as being brought under Fed.R.Civ.P. 60(b); motions made under Rule 60(b) do not toll the time for filing a notice of appeal. The government's motion for reconsideration, however, could have been brought under Fed.R.Civ.P. 59(e)—motion to alter or amend a judgment. A motion, however labelled, served within ten days of the entry of an order that could have been brought under Rule 59(e) tolls the time for filing a notice of appeal. *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir.1984). The government's notice of appeal, filed within sixty days of the order denying its motion for reconsideration, was therefore timely.

### III. STANDARD OF REVIEW

■ A district court's order regarding preliminary injunctive relief is subject to limited review. The denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 975 (9th Cir.1992); *Religion Technology Center, Church of Scientology Int'l, Inc. v. Scott*, 869 F.2d 1306, 1309 (9th Cir.1989). A district court's finding of the likelihood of irreparable harm is reviewed for an abuse of discretion. *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1308, 1316 (9th Cir. 1985). The denial of a motion for reconsideration is also reviewed for an abuse of discretion. *Ayers v. City of Richmond*, 895 F.2d 1267, 1269 (9th Cir.1990).

### IV. STANDARD FOR ISSUING PRELIMINARY INJUNCTIONS

The principal issue in this appeal is whether the district court applied the correct legal standard in denying the government's motion for preliminary injunction.

Generally, to obtain a preliminary injunction, "the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips.in its favor." *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987) (citing *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314–15 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (citing *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985)).

### A. Probability of Success on the Merits

Both the government and Nutri-cology argue that the district court erred in determining the government's likelihood of success on the merits of its claim. The government contends that it established conclusively that Nutri-cology violated the FDCA. Nutri-cology, on the other hand, contends that its products cannot possibly be considered "drugs" or "new drugs" under the FDCA.

■ Essentially, the parties are requesting that we reach the merits. We decline to do so. We review here the denial of a preliminary injunction. Whether Nutri-cology's products are "drugs" or "food" has not been fully addressed or finally decided by the district court and is therefore not ripe for review. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1198, 1200 (1980).

■ In its preliminary determination regarding the merits of the government's claims, the district court applied the definitions of "drug" and "new drug" found in 21 U.S.C. § 321(g)(1)(B) and 21 U.S.C. § 321(p)(1). In addition, the district court accorded the FDA the deference appropriate to an agency entrusted with enforcing the provisions of the FDCA. *California ex*

398

*rel. Van de Kamp v. Tahoe Regional Plan Agency,* 766 F.2d 1308, 1313 (9th Cir.1985); *Hawaiian Elec. Co. v. United States Envtl. Protection Agency,* 723 F.2d 1440, 1470 (9th Cir.1984). Nonetheless, the district court found that the government had made merely a colorable showing that Nutri-cology was violating the FDCA by marketing its products. We cannot say that the district court erred.

### B. Irreparable Injury

█The government relies on our opinion in *Odessa Union,* 833 F.2d 172, when it contends that, because this is a statutory enforcement action, it was not required to make a showing of irreparable harm. We disagree.

In *Odessa Union,* the parties conceded that the FDCA was violated. 833 F.2d at 175, n. 3. We therefore found that the conventional requirement of showing the possibility of irreparable injury was inapplicable. Specifically, we held that "[w]here an injunction is authorized by statute, *and the statutory conditions are satisfied as in the facts presented here,* the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury." *Id.* (emphasis added) (footnote omitted) (citing *Navel Orange Admin. Comm. v. Exeter Orange Co.,* 722 F.2d 449, 453 (9th Cir.1983)). In *Navel Orange,* we did not require a showing of irreparable harm where two of the three corporate defendants admitted that they had not complied with the orders issued by the federal agency. 722 F.2d at 453. In *Navel Orange,* the evidence supported the conclusion that the government was likely to prevail on the merits. In *American Fruit Growers v. United States,* 105 F.2d 722, 735 (9th Cir.1939), a case relied on in *Navel Orange,* we found that an injunction was authorized solely upon a showing of a statutory violation. In *American Fruit Growers,* the defendant did not dispute the factual finding that it was violating the federal agency's order. 105 F.2d at 725.

In this case, the FDCA violation is substantially disputed, and has been disputed since 1982. The district court found that the government submitted "sufficient evidence to survive a motion for a directed verdict," but did not submit sufficient evidence to show that it was "likely to succeed on the merits of the case." July 19, 1991 Order at 7.

Thus, the government's showing did not reach the level of the showing in *Odessa Union,* i.e., of an undisputed statutory violation. Moreover, it did not even match the government's showing in *Navel Orange,* i.e., that it was *likely* to prevail on the merits. Consequently, the government is not entitled to a presumption, rebuttable or otherwise, of irreparable injury.

█ In statutory enforcement cases where the government has met the "probability of success" prong of the preliminary injunction test, we presume it has met the "possibility of irreparable injury" prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public. *Odessa Union,* 833 F.2d at 175; *United States v. Diapulse Corp.,* 457 F.2d 25, 28 (2d Cir.1972). Therefore, further inquiry into irreparable injury is unnecessary. However, in statutory enforcement cases where the government can make only a "colorable evidentiary showing" of a violation, the court must consider the possibility of irreparable injury.

Here, the government did not show that it would probably prevail on the merits. Therefore, it was not entitled to a presumption of irreparable injury.

█ Relying on language in *Odessa Union,* the district court gave the government the benefit of a *rebuttable* presumption of irreparable injury. This was error. However, the district court would have reached the same result had it not initially presumed irreparable injury.

Because the government failed to demonstrate *any* harm to consumers and because Nutri-cology submitted extensive evidence to the contrary, the district court did not abuse its discretion in finding that the government did not make the requisite showing of irreparable harm. The district court, moreover, did not abuse its discretion in

denying the government's motions for pre-liminary injunction and for reconsideration.

AFFIRMED.